UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

CHAZ GULLEY,                          :
     Plaintiff,                       :
                                 :
     v.                               :   Case No. 3:19-cv-612 (SRU)
                                 :
CAPTAIN OGANDO, ET AL.,               :
     Defendants.                      :

## <u>INITIAL REVIEW ORDER</u>

The plaintiff, Chaz Gulley ("Gulley"), is incarcerated at Bridgeport Correctional Center.

He has filed a civil rights action against Captain Ogando, Warden Mulligan, Deputy Warden

Roach, Lieutenant Delpeschio, Correctional Officers Harris, Annear, Baez, Sullivan, Brown and

Brito, Nurse Kris, John Doe 1 and John Doe 2. For the reasons set forth below, the complaint is

dismissed in part.

## I.    **Standard of Review**

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil

complaints and dismiss any portion of the complaint that is frivolous, malicious, or fails to state a

claim upon which relief may be granted, or that seeks monetary relief from a defendant who is

immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required,

the complaint must include sufficient facts to afford the defendants fair notice of the claims and

grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief

that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that

"[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments

that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman*

*v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.     Facts

In early October 2018, Correctional Officer Annear was involved in a "confrontation with [Gulley] during which he retaliated against Gulley. *See* Compl. at 4 ¶ 13. After the incident, Lieutenant Concepcion allegedly removed Officer Annear from the unit and assigned another officer to the unit in place of Officer Annear. *See id.* Gulley asked Deputy Warden Roach to preserve the videotape of the incident involving himself and Officer Annear. *See id.* Deputy Warden Roach and Warden Mulligan informed Gulley that they would investigate the incident and keep Officer Annear separated from him. *See id.* ¶ 14.

On November 28, 2018, Gulley was housed in B-2 Unit in the Walker Building at MacDougall-Walker Correctional Institution. *See id.* at 3 ¶ 7. Gulley covered the window in his cell door to protest the treatment that he had received during his confinement in the security risk group program. *See id.* In response, officers escorted him to the restrictive housing unit. *See id.* ¶ 8. On November 29, 2018, a prison official informed Gulley that he would not be transferred to Northern Correctional Institution until he completed fourteen days in punitive segregation. *See id.* ¶ 9.

On November 30, 2018, Gulley covered the window of his cell door in the restrictive housing unit because Captain Ogando had informed him that he would not be able to make a legal telephone call to Hope Metcalf that day. *See id.* at 4 ¶ 15. At that time, Gulley was confined with in-cell restraints. *See id.* ¶ 16. In response to Gulley's conduct in covering the window in his cell door, Captain Ogando ordered officers to put a black box over his wrist

restraints.  *See id.*  Because Gulley was involved in litigation challenging the use of restraints on inmates as punishment, he attempted to stand up in protest as the officers put the black box over his wrist restraints.  *See id.* at 5 ¶ 17.  As a result of Gulley's resistance to the use of the black box, Captain Ogando ordered officers to place Gulley on stationary, four-point restraints. *See id.* ¶ 18.

In applying the four-point restraints, the officers deliberately left the restraint on his right arm loose.  *See id.* ¶ 19.  Shortly, after the restraints had been applied and the officers had left Gulley's cell, he slipped out of the restraint on his right arm.  *See id.* ¶¶ 20-21.  Correctional Officers Baez, Annear and Harris entered Gulley's cell and punched and kicked him in the face, back and neck as he lay in a contorted position off the bunk.  *See id.* ¶ 22.  Correctional Officer Brito was in charge of videotaping the incident, but failed to turn on the videorecorder.  *See id.* Captain Ogando and Lieutenant Delpeschio sprayed Gulley in the face and body with a chemical agent.  *See id.* at 6 ¶ 23.

Officers escorted Gulley to the shower to be decontaminated from the chemical agent residue.  *See id.* ¶ 24.  Officers escorted Gulley back to the same cell and placed him in four-point restraints.  *See id.* ¶ 25.  No one decontaminated the cell from the chemical agent residue before placing Gulley back in it.  *See id.*

During the re-application of restraints, Correctional Officer Sullivan slammed his closed fist into Gulley's shoulder repeatedly.  *See id.* ¶ 27.  Correctional Officer Sullivan was a named defendant in another lawsuit filed by Gulley, Case No. 3:18cv941(SRU).  *See id.*  Correctional Officer Brown, who had a relationship with Correctional Officer Sullivan, choked Gulley as he jerked and squirmed.  *See id.*

Lieutenant Delpeschio provided Gulley with a Ferguson gown to wear during his confinement in four-point restraints instead of Gulley's own clothes. *See id.* ¶ 28. Gulley received his clothes later that day when officials downgraded his status and removed him from four-point restraints. *See id.* at 7 ¶ 29. Lieutenant Delpeschio issued Gulley a disciplinary report for breaking one of the restraints, but another lieutenant later dismissed the charge. *See id.* at 5 ¶ 19.

## III. Discussion

Gulley contends that the defendants subjected him to excessive use of force in violation of the Eighth Amendment and that Nurse Kris was deliberately indifferent to his medical needs in violation of the Eighth Amendment. I construe the complaint as also asserting a First Amendment retaliation claim and several Eighth Amendment deliberate indifference to health or safety claims.

### A. Official Capacity Claims

Gulley seeks monetary damages and sues the defendants in their individual and official capacities. To the extent that Gulley seeks monetary relief from the defendants in their official capacities, such a request is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). Accordingly, the claims for damages against the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

### B. John Doe Defendants

Gulley does not specifically refer to the two John Doe defendants in the body of the complaint. Gulley does refer generally to correctional officers who applied the black box over his wrist restraints and applied four-point restraints to his arms and legs on November 30, 2018. *See* Compl. at 5 ¶¶ 17-20. He alleges that in response to his conduct in covering the window in his cell door, Captain Ogando ordered officers to place the black box over his wrist restraints. During the application of the black box, Gulley attempted to stand up. Those allegations do not state a claim of deliberate indifference to Gulley's health or safety.

Gulley contends that during his placement in four-point restraints, officers did not apply one of the four-point restraints to his right arm tightly enough and he was subsequently able to slip out of the restraint. *See id.* I cannot discern how the officers' conduct in applying a restraint loosely might violate Gulley's constitutionally or federally protected rights. Gulley concedes that he chose to slip his right arm out of the restraint. The claim against the John Doe defendants in their individual capacities is dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

C.    **Eighth Amendment – Excessive Force**

Gulley alleges that Correctional Officers Harris, Annear and Baez punched and kicked him as he lay off the side of his bunk with restraints attached to three of his limbs and Captain Ogando, Lieutenant Delpeschio sprayed him with a chemical agent. Correctional Officer Brito was present during the use of force and failed to turn on the video camera to film the incident. During the re-application of four-point restraints, Officers Sullivan and Brown used excessive force against Gulley.

In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Supreme Court established the minimum

standard to be applied in determining whether force by a correctional officer against a sentenced inmate states a constitutional claim under the Eighth Amendment in contexts other than prison disturbances. When an inmate claims that excessive force has been used against him by a prison official, he has the burden of establishing both an objective and subjective component to his claim. *See Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).

To meet the objective component, the inmate must allege that the defendant's conduct was serious enough to have violated "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (internal quotation marks and citation omitted). The subjective component requires the inmate to show that the prison officials acted wantonly and focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). Courts consider factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (internal quotations and citation omitted).

Given that three of Gulley's limbs were still restrained and that he has not alleged that made any attempt to resist the efforts of officers to re-apply the restraint to his free arm, his allegations regarding the use of kicks and punches to his head, face, back and neck by Correctional Officers Harris, Annear and Baez and the deployment of a chemical agent into Gulley's face by Captain Ogando and Lieutenant Delpeschio, plausibly state a claim that the force used was intended to cause him pain or discomfort rather than to maintain discipline or security. *See Al-Bukhari v. Semple*, No. 16-CV-1428, 2017 WL 2125746, at *4 (D. Conn. May.

16, 2017) (allegation that prison official "slammed [plaintiff] on the ground and sprayed him with a harmful chemical agent, even though [he] had not been resisting their efforts to escort him out of the cell" stated Eighth Amendment claim of excessive force); *Lewis v. Clarkstown Police Dep't*, No. 11–CV–2487, 2014 WL 1364934, at *6 (S.D.N.Y. Mar. 31, 2014) (noting that the use of pepper spray and similar chemical agents that inflict a harm of only limited duration may still be deemed excessive depending on the context in which it was used), *adhered to on reconsideration*, 2014 WL 6883468 (S.D.N.Y. Dec. 8, 2014); *Adilovic v. Cty. of Westchester*, No. 08–CV–10971, 2011 WL 2893101, at *6 n. 12 (S.D.N.Y. July 14, 2011) (noting that the use of chemical agents against inmates "constitutes a significant degree of force and can amount to an excessive use of force" (citation and internal quotation marks omitted)). Furthermore, the facts do not suggest a penological purpose for the force used by Officers Sullivan or Brown – repeatedly punching him in the shoulder and choking him - during the re-application of four-point restraints to Gulley. Accordingly, the Eighth Amendment excessive force claims will proceed against Correctional Officers Harris, Annear, Baez, Sullivan and Brown, Captain Ogando and Lieutenant Delpeschio in their individual capacities.

### D. Eighth Amendment – Failure to Intervene

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Thus, even if a prison official has not directly participated in the use of excessive force, the official may be liable under the Eighth Amendment if he or she was present during the use of force but did not attempt to intervene on behalf of the inmate to stop the use of force. *See Curley*

*v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be."). To state a claim that a prison official failed to intervene, an inmate must allege that: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) [the officer knew] that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene." *Jean–Laurent v. Wilkinson,* 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).

Gulley has alleged that Correctional Officer Brito was present in the cell after he had slipped out one of the four-point restraints, failed to turn on the video camera to record the incident, and took no steps to intervene to stop or stem the use of force against him by Officers Harris, Annear and Baez or Captain Ogando or Lieutenant Delpeschio. I conclude that Gulley has asserted a plausible Eighth Amendment failure to intervene claim against Officer Brito in his individual capacity.

### E.      Eighth Amendment – Deliberate Indifference to Safety/Health

I construe the allegations in the complaint to assert a claim that defendants failed to protect Gulley from harm as well as claims that the defendants subjected him to unconstitutional conditions of confinement. In the context of a prisoner's conditions of confinement, those conditions which are "restrictive or even harsh" do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although the Constitution does not require "comfortable" prison conditions, it does not permit prison officials to maintain conditions which inflict "unnecessary and wanton pain" or which result in the "serious deprivation of basic human needs ... or the minimal civilized measure of life's necessities." *Id.*

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[]" or posed "a substantial risk of serious harm" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes*, 452 U.S. at 347. The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes,* 452 U.S. at 348.

To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that the inmate allege that the defendants acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

### 1.      Failure to Protect from Harm

Gulley has alleged that Warden Mulligan and Deputy Warden Roach were aware, at the end of October 2018, that Officer Annear posed a threat of harm to him but failed to take steps to separate Officer Annear from Gulley. Approximately one month later, Officer Annear used force against Gulley for no apparent purpose other than to cause him injury. The allegation of

deliberate indifference to safety/failure to protect Gulley from harm will proceed against Warden Mulligan and Deputy Warden Roach in their individual capacities.

### 2.    Denial of Clothing

Gulley alleges that after the defendants re-applied the four-point restraints to his arms and legs, Lieutenant Delpeschio forced him to wear a Ferguson gown instead of his own clothes. He received his clothes later that day when officials downgraded his status and removed the four-point restraints. The fact that Gulley may not have been able to wear his own clothes for at most a day and a half does not state a claim of a serious deprivation of a basic human need. The claim is dismissed as lacking an arguable factual or legal basis. *See* 28 U.S.C. § 1915A(b)(1).

### 3.    Failure to Decontaminate Cell from Chemical Agent

Gulley asserts that after he had been taken to the shower to rinse off the chemical agent that Captain Ogando and Lieutenant Delpeschio had sprayed into his face and onto his body during his confinement in a cell in four-point restraints, officers and supervisors escorted him back to the same cell in order to re-apply the four-point restraints to his arms and legs. Gulley contends that the officers and supervisors neglected to decontaminate the cell from the effects of the chemical agent that had been deployed in it earlier that day as required by a Department of Correction Administrative Directive 6.5.

Gulley does not allege that any of the named defendants were involved in failing to decontaminate the cell. Nor does Gulley allege that he suffered any injury or harm from his confinement in the cell. Thus, Gulley has not alleged that the named defendants were deliberately indifferent to his health or safety as a result of his confinement in a cell that had not been sanitized from the effects of a chemical agent. Furthermore, "state prison directives do not

confer any constitutionally protected rights on inmates. . . . and Fourteenth Amendment due process protections are not implicated by the defendants' alleged failure to comply with administrative directives." *Riddick v. Chevalier*, No. 3:11CV1555 SRU, 2013 WL 4823153, at *4 (D. Conn. Sept. 9, 2013) (citing *inter alia Sandin v. Conner,* 515 U.S. 472, 481–82 (1995) (prison directives, which are designed primarily to guide correctional staff, do not confer rights on inmates).

The claim that unidentified officers and supervisors placed Gulley in a cell without sanitizing it from the effects of a chemical agent that officials had deployed into it earlier in the day fails to state a claim of a violation of Gulley's constitutional or federally protected rights. That claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### F.      Eighth Amendment – Deliberate Indifference to Medical Needs

Gulley alleges that Nurse Kris observed the injuries that he had suffered as a result of the use of force by Correctional Officers Harris, Annear, Baez, Sullivan and Brown, but failed to properly assess or treat the injuries. Instead, she either minimized the degree of swelling to his face and head or failed to report the injuries.

To state a claim for deliberate indifference to a serious medical need, a plaintiff must meet a two-pronged test. Under the first prong, a plaintiff must demonstrate that his or her medical need was "sufficiently serious." *Salahuddin*, 467 F.3d at 279. Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions. *See Salahuddin*, 467 F.3d at 279-80. Mere negligent conduct does constitute deliberate indifference. *See id.* at 280 ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent."); *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (medical malpractice alone does not amount to deliberate indifference).

Gulley has alleged that he suffered swelling to his head and face as a result of the unnecessary force used by Correctional Officers Harris, Annear, Baez, Sullivan and Brown. Gulley does not allege that the swelling worsened over time or that it required him to seek additional medical treatment. Nor does Gulley allege that it interfered with his daily activities. A serious medical need is "a condition of urgency that may result in degeneration or extreme pain." *Chance*, 143 F.3d at 702 (internal quotation marks and citation omitted). As alleged, the facts do not state a plausible claim that Gulley suffered from a serious medical need at the time that Nurse Kris examined him. *See Telesford v. Wenderlich*, 16-CV-6130 CJS, 2018 WL 4853667, at *11 (W.D.N.Y. Oct. 5, 2018) (finding minor injuries, including facial swelling, insufficiently serious to support an Eighth Amendment medical claim); *Bradley v. Rell*, 703 F. Supp. 2d 109, 121-22 & n.12 (N.D.N.Y. 2010) (inmate's injuries including: blurry vision, swelling and bruising around his head, an abrasion to his right leg, extreme headaches and psychological problems were insufficient for a rational fact finder to conclude that "his injuries were sufficiently [severe] to constitute a serious medical condition") (collecting cases). I conclude that Gulley has not alleged facts to meet the objective prong of the Eighth Amendment standard.

In addition, the allegation that Nurse Kris minimized his injuries or did not accurately characterize the nature of his injuries does not in and of itself constitute deliberate indifference to Gulley's injuries. Thus, Gulley has not asserted facts to meet the subjective prong of the Eighth Amendment standard. I conclude that Gulley has not stated a plausible claim that Nurse Kris was deliberately indifferent to his medical needs when she examined him on November 30, 2018. Accordingly, I dismiss this Eighth Amendment claim without prejudice. *See* 28 U.S.C. § 1915A(b)(1).

### G.     First Amendment - Retaliation

Gulley alleges that he named Correctional Officer Sullivan as a defendant in another lawsuit that he had filed in this court on June 7, 2018. *See Gulley v. Limmer, et al.*, Case No. 3:18cv941(SRU). On November 30, 3028, during the re-application of four-point restraints to Gulley's limbs, Officer Sullivan used excessive force against him. In addition, Officer Brown, with whom Officer Sullivan had a relationship, also used excessive force against Gulley.

When prison officials take adverse action against an inmate, motivated by the inmate's exercise of a protected constitutional right, a section 1983 retaliation claim may be sustained. *See Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). To state a claim for First Amendment retaliation, a plaintiff must allege facts showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took an adverse action against [him or her], and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (internal quotation marks and

citation omitted). The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Id.* at 295 (internal quotation marks and citation omitted).

Filing a lawsuit constitutes a protected activity. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (seeking redress of grievances in judicial or administrative forum is protected activity); *Baskerville v. Blot*, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) (noting that a "prisoner's filing of a grievance" and "the filing of a lawsuit" are "constitutionally protected activit[ies]") (citations omitted)). In addition, a use of physical force arguably constitutes an adverse action. *Baskerville*, 224 F. Supp. 2d at 731-32 ("[The plaintiff's] claim regarding the retaliatory assault sufficiently describes adverse conduct that would deter a reasonable inmate from exercising his constitutional rights."); *Flemming v. King*, No. 14-CV-316 (DNH/CFH), 2016 WL 5219995, at *5 (N.D.N.Y. June 20, 2016) ("[T]he alleged assault need not rise to the level of an Eighth Amendment excessive force violation in order to be considered an adverse action for purposes of First Amendment retaliation analysis."), *adopting report and recommendation*, 2016 WL 5173282, at *1 (N.D.N.Y. Sept. 21, 2016). Thus, Gulley has alleged facts to meet the first and second prong of a retaliation claim.

At the time of the use of force on November 30, 2018, Officer Sullivan had been served with a copy of the complaint in *Gulley v. Limmer, et al.*, Case No. 3:18cv941(SRU), and the case remained open. *See id.* (Return of Service, ECF No. 9). Given the fact that Officer Sullivan had been aware of the lawsuit pending against him for approximately four months at the time that he

used excessive force against Gulley, I conclude that Gulley has stated a plausible causal connection between the use of force by Officer Sullivan and the filing his lawsuit as required to meet the third prong of a retaliation claim. *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (temporal proximity established where six months had elapsed and it was "plausible that the officers waited to exact their retaliation at an opportune time"). Thus, I will permit the First Amendment retaliation claim to proceed against Officer Sullivan in his individual capacity.

Gulley suggests that at the time that Officer Brown used excessive force against him during the re-application of four-point restraints, she was also aware of his lawsuit against Officer Sullivan given her relationship with Officer Sullivan. I will permit the First Amendment retaliation claim to also proceed against Officer Brown in her individual capacity.

**It is hereby ordered that:**

**(1)** The claims against the defendants in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). All claims against John Doe 1 and John Doe 2, the Eighth Amendment claim that Lieutenant Delpeschio would not permit Gulley to wear his own clothes for at most a day and a half, and the Eighth Amendment claim that officers and supervisors placed Gulley in a cell without sanitizing it from the effects of a chemical agent are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1), and the claim of deliberate indifference to medical needs against Nurse Kris is **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). The First Amendment retaliation claims will proceed against Officers Sullivan and Brown in their individual capacities, the Eighth Amendment excessive force claims will proceed against Correctional Officers Harris, Annear, Baez, Sullivan and Brown, Captain Ogando and Lieutenant Delpeschio in their individual capacities, the Eighth Amendment failure to intervene

claim will proceed against Officer Brito in his individual capacity and the Eighth Amendment deliberate indifference to safety/failure to protect claim will proceed against Warden Mulligan and Deputy Warden Roach in their individual capacities.

I will permit Gulley thirty (30) days to file an amended complaint with regard to the Eighth Amendment claim that, immediately after the use of force by Officers Harris, Annear, Baez, Sullivan and Brown, Captain Ogando and Lieutenant Delpeschio, Nurse Kris minimized his severity of his injuries or failed to treat his injuries. The amended complaint must correct the deficiencies outlined above. If Gulley chooses not to file an amended complaint within the time specified, the case will proceed on the First Amendment retaliation claim and the Eighth Amendment excessive force, failure to intervene and deliberate indifference to safety claims described above.

(2)     Within twenty-one (21) days of this Order, the Clerk shall verify the current work addresses of: Captain Ogando, Warden Mulligan, Deputy Warden Roach, Lieutenant Delpeschio, Correctional Officer Harris, Correctional Officer Annear, Correctional Officer Baez, Correctional Officer Sullivan, and Correctional Officer Brown and mail a copy of the complaint, this order, and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her confirmed address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)     Defendants Ogando, Mulligan, Roach, Delpeschio, Harris, Annear, Baez, Sullivan and Brown shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any and all additional defenses permitted by the Federal Rules.

(4)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

(5)     All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

(6)     The Clerk shall send a copy of the complaint and this order to the Connecticut Attorney General and to the Department of Correction Legal Affairs Unit.


SO ORDERED at Bridgeport, Connecticut this 17th day of June 2019.


/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge